CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LAURA WILLIS-ALBRIGO, individually, and on behalf of all others similarly situated,

        Plaintiff,

        v.

THE PROCTER & GAMBLE COMPANY

        Defendant.

Case No. **'24CV1416 RSH MSB**

## CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff Laura Willis-Albrigo ("Plaintiff") brings this action against Defendant The Procter & Gamble Company ("Defendant"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

<u>**NATURE OF THE ACTION**</u>

1. Defendant sells a line of "Tampax Pearl" Tampons (the "Tampons" or "Products").[1] The problem is the Tampons contain lead which is a known health hazard that poses a health threat.

2. There are no "safe" levels of lead. The World Health Organization ("WHO") states: "**There is no level of exposure to lead that is known to be without harmful effects**."[2]

3. The U.S. Centers for Disease Control and Prevention ("CDC") states: "**There are no safe levels of lead in the blood**."[3]

4. The U.S. Food & Drug Administration ("FDA") states "**there is no known safe level of exposure to lead** ..."[4]

---

[1] *See* https://tampax.com/en-us/all-products/pearl/

[2] World Health Organization, *Lead Poisoning* (Aug. 11, 2023), *available at* https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health (emphasis orignial)

[3] .S. Centers for Disease Control and Prevention, *About Childhood Lead Poisoning Prevention* (May 23, 2024) *available at* https://www.cdc.gov/lead-prevention/about/index.html

[4] .S. Food & Drug Administration, Lead in Food and Foodwares (July 25, 2024) *available at* https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

CROSNER LEGAL, P.C.

5.     Lead affects numerous organs and systems in the body and accumulates over time. This leads to health risks and toxicity, including hindering neurological function, anemia, and kidney damage.[5]

6.     Defendant makes the following representations on the labels of the Tampons:

- "ALL DAY COMFORT AND PROTECTION"
- "EVERYDAY COMFORT FOR TO 8HRS OF OUT OF SIGHT, OUT OF MIND PROTECTION"
- "#1 GYNECOLOGIST RECOMMENDED TAMPON BRAND"
- "FREE OF PERFUME"
- "FREE OF ELEMENTAL CHLORINE BLEACHING"
- "TAMPON FREE OF DYES"
- "CLINICALLY TESTED GENTLE TO SKIN"
- "Our best pearl protection ever"

(collectively, "the Representations").

7.     The Net effect, or net impression, of the Representations is that the Tampons are safe to use and will provide "protection." However, the Representations are false and misleading because the Tampons contain unsafe levels of lead.

8.     The labels for one of the Tampons are shown below.

---

[5] Wani AL, et al., *Lead toxicity: a review*, INTERDISCIP TOXICOL. (June 2015), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898

CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.



**# 1 U.S. GYNECOLOGIST RECOMMENDED TAMPON BRAND†**
LA MARQUE DE TAMPONS LA PLUS RECOMMANDÉE PAR LES GYNÉCOLOGUES AUX É.-U.†

✓ **FREE OF PERFUME**
SANS PARFUM

✓ **FREE OF ELEMENTAL CHLORINE BLEACHING**
SANS BLANCHIMENT AU CHLORE ÉLÉMENTAIRE

✓ **TAMPON FREE OF DYES**
TAMPON SANS COLORANT

✓ **CLINICALLY TESTED GENTLE TO SKIN**
DOUCEUR POUR LA PEAU ÉPROUVÉE EN CLINIQUE

INGREDIENTS/INGRÉDIENTS : RAYON, COTTON, POLYPROPYLENE, POLYETHYLENE, POLYESTER, GLYCERIN, PARAFFIN, ETHOXYLATED FATTY ACID ESTERS/ESTERS D'ACIDES GRAS ÉTHOXYLÉS, PEG-100 STEARATE, TITANIUM DIOXIDE

Learn more about your product and its ingredients
Apprenez-en plus sur votre produit et ses ingrédients
TAMPAX.COM

*Our best Pearl protection ever*

*Notre meilleure protection Pearl jamais offerte*

SCAN ME

TAMPAX

BALAYEZ-MOI

USE FOR 8 HOURS MAXIMUM.
LES TAMPONS PEUVENT S'UTILISER PENDANT UN MAXIMUM DE 8 HEURES.
MAX 8H

†**based on a 2021 survey**
selon un sondage réalisé en 2021

9.     "Exposure to lead and lead chemicals can occur through inhalation, ingestion, dermal absorption, absorption from retained or embedded leaded foreign body, and trans-placental (endogenous) routes."[6]

10.     The Tampons are absorbent cylinders made of cotton/rayon that are inserted into the vagina to absorb menstrual blood. The vagina absorbs chemicals more easily than other parts of the body, and there is no safe level for lead.[7] Chronic metal absorption has been linked to an increased risk of cancer, infertility, dementia, and other health issues.[8]

11.     Independent testing of one of the Tampons performing a quantitative analysis of Lead, Lead, Arsenic, and Mercury by Inductively Couple Plasma Mass Spectrometry utilizing EPA 3052 (ICPMS-QNT-EL-HM) found that the Product contained 0.206 ug/g of lead as shown below:

| DATE: | August 5, 2024 | FRL JOB ID: | J24-0724-F | ALIQUOT ID: | 240722022-2-01 |
|---|---|---|---|---|---|
| CLIENT: | Crosner Legal | | | | |
| SAMPLE ID: | 4174243043W | | | | |
| | Tampax Pearl Tampons, with LeakGuard Braid, Ultra Absorbency, Unscented, 45 Count (Pack of 1) - Packaging May Vary | | | | |
| ANALYSIS: | Quantitative analysis of Lead, Cadmium, Arsenic, and Mercury by Inductively Couple Plasma Mass Spectrometry utilizing EPA 3052 (ICPMS-QNT-EL-HM) | | | | |
| RESULTS: | Element | Result | | | |
| | As | ND | | | |
| | Cd | ND | | | |
| | Pb | 0.206 ug/g | | | |
| | Hg | 0.001 ug/g | | | |

ND = Not Detected at LOQ of < 0.01 ug/g for As & Cd and < 0.001 ug/g for Hg & Pb

This document electronically signed by James Kababick on 8/5/2024; Signature on file.

[6] U.S. Department of Health & Human Services, Agency for Toxic Substances and Disease Registry, What Are Routes of Exposure to Lead? (May 24,2023) *available at* https://www.atsdr.cdc.gov/csem/leadtoxicity/exposure_routes.html

[7] University of California, Berkeley, Public Health, *First study to measure toxic metals in tampons shows arsenic and lead, among other contaminants* (July 3, 2024) *available at* https://publichealth.berkeley.edu/news-media/research-highlights/first-study-to-measure-toxic-metals-in-tampons-shows-arsenic-and-lead

[8] *Id.*

CROSNER LEGAL, P.C.

12.     The ICP-MS-QNT-EL-HM (Inductively Coupled Plasma Mass Spectrometry – Quantitative, Elemental Analysis, High Matrix) method is designed for the accurate determination of metals, including lead, in various types of samples. It is recognized for its high sensitivity and precision in measuring trace levels of metals, including lead.

13.     The "HM" means the test method is tailored to handle high matrix samples. It is designed to analyze complex or concentrated sample matrices with accuracy. The "QNT" designation indicates that the method is focused on quantitative analysis. It is designed to provide precise and reliable concentration measurements of lead. The "EL" stands for elemental analysis, affirming that the method is specifically designed for determining the concentration of elements like lead.

**JURISDICTION AND VENUE**

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing, and sale of the Tampons in California, specifically in this district. The marketing of the Tampons, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Tampons to consumers in California, including Plaintiff. The Court also has specific

CROSNER LEGAL, P.C.

jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it reasonable for Defendant to defend this lawsuit because it has sold harmful Tampons to Plaintiff and members of the Class in California. By distributing and selling the Tampons in California, Defendant has intentionally expressly aimed conduct at California which caused harm to Plaintiff and the Class which Defendant knows is likely to be suffered by Californians.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased one of the Tampons within this District.  Venue is also proper in this District pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this District, and Plaintiff purchased a Tampon at issue in this District.

## PARTIES

17. Defendant The Procter & Gamble Company is an Ohio corporation that maintains its principal place of business in Cincinnati, Ohio.

18. Plaintiff is a resident of San Diego County, California. Plaintiff purchased the "Tampax Pearl Ultra" product during the class period at retail stores in and around San Diego County. Plaintiff relied on the Representations on the Tampon's packaging.

19. Plaintiff was not aware that the Tampons contained lead.  After reading the label, Plaintiff purchased the Tampons on the assumption that the labeling was accurate, and that the Tampons did not contain known harmful substances like lead. Plaintiff would not have purchased the Tampons had she known the Tampons contain lead, a substance which is known to be hazardous to human health. As a result, Plaintiff suffered in fact when she spent money to

purchase the Tampons she would not have purchased absent Defendant's misconduct.

20.    Plaintiff continues to see the Tampons for sale at retail stores near her home and desires to purchase the Tampons again if the Tampons did not contain lead. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiff is unable to rely on the Tampons' labeling when deciding in the future whether to purchase the Tampons.

21.    Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement or information on the Tampons' labeling or packaging that disclosed that the Tampons contained lead. At the time of Plaintiff's purchases, she did not know the Tampons contained lead.

## REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S MISREPRESENTATIONS AND OMISSIONS

22.    Consumers, like Plaintiff, relied on the Representations set forth above. The net-effect or net-impression of the Tampons' labeling on consumers is that the Tampons do not contain harmful ingredients like lead.

23.    Consumers, like Plaintiff, want to know if a Tampon they place inside their body contains substances which are hazardous to their health. Defendant's nondisclosure of the lead in the Tampons is material because reasonable consumers would deem the presence of lead in the Tampons to be important in determining whether to purchase the Tampons.

24.    Defendant has exclusive knowledge that the Tampons contain lead. The fact that Defendant's Tampons contain lead is not reasonably accessible to Plaintiff and consumers. Consumers, like Plaintiff, trust that Tampons they purchase do not contain toxic heavy metals like lead.

25.    Defendant has a duty to disclose the presence of lead in the Tampons because the fact is known to Defendant (that the Tampons contain lead), and the failure to disclose the lead in the Tampons is misleading.

CROSNER LEGAL, P.C.

26.     The lead in the Tampons implicates a health concern that is important to reasonable consumers when deciding to purchase Defendant's Tampons. Defendant has actively concealed the levels of lead in the Tampons from Plaintiff and putative class members.

27.     A failure to disclose a fact constitutes actionable conduct if the omission goes to the central function of the Tampon. Here, the Tampons' central function is for people to safely use the Tampons. Lead-tainted Tampons do not serve their central function.

28.     Reasonable consumers, like Plaintiff, would deem it important in determining whether to purchase the Tampons because Plaintiff would not have purchased the Tampons had she known that harmful elements like lead were in the Tampons. That is, the omission of the lead content of the Tampons was material because a reasonable consumer would deem it important in determining how to act in the transaction at issue.

29.     A failure to disclose a fact constitutes actionable conduct if the omission causes an unreasonable safety hazard. Here, it is not reasonable to sell a Tampon that consumers put inside their body with substantial levels of lead. As explained above, lead is a safety hazard because it causes several negative health effects in humans.

30.     Defendant also made partial representations that the Tampons are safe, including that the Tampons provide "Protection," which create the net-impression that the Tampons did not contain potentially harmful ingredients like lead. These partial disclosures are misleading because the lead content of the Tampons was not disclosed.

**PLAINTIFF AND THE PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

31.     Plaintiff and putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. With the other

CROSNER LEGAL, P.C.

Tampons on the market without lead, a reasonable consumer would choose to purchase a Tampon without lead and not Defendant's Tampons.

32.     Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Tampons that were defective, not merchantable, and not fit for their represented purpose.

33.     Consumers, including Plaintiff, would not have purchased Defendant's Tampons if they had known the Tampons contain lead, a substance which has known adverse health effects on humans. Defendant did not disclose that the Tampons contain lead.

34.     Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Tampons. As a consequence of Defendant's deceptive labeling and material omissions, Plaintiff alleges Defendant has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") and constitutes a breach of implied warranties.

## NO ADEQUATE REMEDY AT LAW

35.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Tampons more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

36.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Tampons, across a multitude of media platforms, including the Tampon labels and

CROSNER LEGAL, P.C.

packaging, over a long period of time, in order to gain an unfair advantage over competitor Tampons.

37.     Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

38.     The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiff alleges Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Specifically, Defendant has violated California's Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code § 25249.5, *et seq.* No other causes of actions allow this claim to proceed, and thus, there is no adequate remedy at law for this specific violation of the UCL's unlawful prong. Plaintiff's UCL unlawful prong claim does not rest on the same conduct as her other causes of action, and there is no adequate remedy at law for this specific unlawful claim.

39.     Injunctive relief is a primary goal of this action. It is appropriate on behalf of Plaintiff and members of the class because Defendant continues to omit material facts about the Tampons. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

40.     Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold Tampons is necessary to dispel the public misperception about the Tampons that has resulted from years of Defendant's unfair, fraudulent,

and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Tampons contain lead; and/or requiring prominent qualifications and/or disclaimers on the Tampons' front label concerning the Tampons' true nature.

41.    An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

42.    It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

CROSNER LEGAL, P.C.

<u>**CLASS ACTION ALLEGATIONS**</u>

43.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

> All persons who purchased the Tampons for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated.

44.    Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

45.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

46.    The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

47.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

48.    <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Tampons;

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Tampons;

c.    Whether Defendant made material omissions concerning the Tampons that were likely to deceive the public;

d.    Whether Plaintiff and the Class are entitled to injunctive relief;

e.    Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

49.    <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Tampons. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

50.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

51.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

52.    Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

53.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

54.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

## Violation of California's Consumers Legal Remedies Act
## Cal. Civ. Code §§ 1750 *et seq.*

55.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

56.     Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

57.     At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

58.     At all relevant times, Defendant constituted a "person," as defined in California Civil Code section 1761(c).

59.     At all relevant times, the Tampons manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

60.     The purchases of the Tampons by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

61.     Defendant disseminated, or caused to be disseminated, through their advertising, false and misleading representations, including the Tampons' labeling

CROSNER LEGAL, P.C.

that they do not contain hazardous substances such as lead. Defendant fails to disclose that the Tampons contain high lead. This is a material omission as reasonable consumers would find the fact that the Tampons contain lead to be important to their decision in purchasing the Tampons. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Tampon have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Tampon are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Tampons with an intent not to sell the Tampons as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

62. Defendant violated the CLRA because the Tampons contain lead. Defendant knew or should have known that consumers would want to know that the Tampons contain lead. Defendant had a duty to disclose that the Tampons contain lead.

63. Based on the statutory text, legislative history (which includes the National Consumer Act), the judicial decisions and statutes that existed when the CLRA was enacted, the subsequent case law, and the many amendments to the CLRA from 1975 through 2016, failures to disclose material facts are actionable under the CLRA. In particular, subdivision (a)(5), (7), and (9) of Civil Code section 1770 proscribe material omissions.

64. Defendant's labeling of the Tampons also created the net-impression that the Tampons do not contain hazardous substances such as lead. Defendant had exclusive knowledge of the material fact that the Tampons contain lead, and

1    Defendant failed to disclose this fact. Defendant actively concealed this material
2    fact. The fact that the Tampons contain lead is material to consumers because
3    reasonable consumers would deem the existence of lead in a Tampon that they
4    place inside their body important in determining whether to buy the Tampons.

5          65.    Defendant's actions as described herein were done with conscious
6    disregard of Plaintiff and the Class members' rights and were wanton and
7    malicious.

8          66.    Defendant's wrongful business practices constituted, and constitute,
9    a continuing course of conduct in violation of the CLRA, since Defendant is still
10   representing that the Tampons have characteristics which they do not have.

11         67.    Pursuant to California Civil Code section 1782(d), Plaintiff and the
12   members of the Class seek an order enjoining Defendant from engaging in the
13   methods, acts, and practices alleged herein.

14         68.    Pursuant to California Civil Code section 1782, Plaintiff will notify
15   Defendant in writing by certified mail of the alleged violations of the CLRA and
16   will demand that Defendant rectify the problems associated with the actions
17   detailed above and give notice to all affected consumers of their intent to so act. If
18   Defendant fails to rectify or agree to rectify the problems associated with the
19   actions detailed herein and give notice to all affected consumers within 30 days of
20   the date of written notice pursuant to section 1782 of the CLRA, Plaintiff will
21   amend this complaint to seek actual, punitive, and statutory damages, as
22   appropriate.

23         69.    Pursuant to section 1780(d) of the CLRA, below is an affidavit
24   showing that this action was commenced in a proper forum.

25

26

27

28

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

70.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

71.     Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

72.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

73.     Defendant committed "unlawful" business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and violating California Civil Code sections 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq.*, California common law breach of implied warranties, and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5*, et seq.* Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

74.     California's Proposition 65 establishes a Maximum Allowable Dose Level ("MADL") of .5 ug of lead per day for reproductive toxicity. *See* https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds.     Here, the Tampons contain 0.206 ug/g lead. This exceeds the Proposition 65 limits given the weight of the tampons and the fact that consumers use tampons approximately three times per day.

75.     Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm

1   to Plaintiff and the members of the a Class; (2) engaging in conduct that is

2   immoral, unethical, oppressive, unscrupulous, or substantially injurious to

3   Plaintiff and the members of the Class; and (3) engaging in conduct that

4   undermines or violates the intent of the consumer protection laws alleged herein.

5   There is no societal benefit from deceptive advertising.

6       76.   Plaintiff and the other Class members paid for a Tampon that is not

7   as advertised by Defendant. Further, Defendant failed to disclose a material fact

8   (that the Tampons contain lead) of which it had exclusive knowledge. While

9   Plaintiff and the other Class members were harmed, Defendant was unjustly

10  enriched by its false misrepresentations and material omissions. As a result,

11  Defendant's conduct is "unfair," as it offended an established public policy. There

12  were reasonably available alternatives to further Defendant's legitimate business

13  interests, other than the conduct described herein. For example, Defendant's

14  competitors do not sell tampons that contain lead.

15      77.   Defendant committed "fraudulent" business acts or practices by

16  making the representations of material fact regarding the Tampons set forth herein.

17  Defendant's business practices as alleged are "fraudulent" under the UCL because

18  they are likely to deceive customers into believing the Tampons do not contain

19  lead.

20      78.   Plaintiff and the other members of the Class have in fact been

21  deceived as a result of their reliance on Defendant's material representations and

22  omissions. This reliance has caused harm to Plaintiff and the other members of the

23  Class, each of whom purchased Defendant's Tampons. Plaintiff and the other

24  Class members have suffered injury in fact and lost money as a result of purchasing

25  the Tampon and Defendant's unlawful, unfair, and fraudulent practices.

26      79.   Defendant's wrongful business practices and violations of the UCL

27  are ongoing.

28

80.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

81.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

82.    Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices that do not comply with the law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

### Breach of Implied Warranties

83.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

84.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

85.    Defendant was at all relevant times the manufacturer, distributor, and/or warrantor of the Tampons. Defendant knew or had reason to know of the specific use for which its Tampons were purchased.

86.    Defendant, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Tampons made implied representations to Plaintiff and the Class that the Tampons were fit for the particular purpose of use inside the body. However, the Tampons are hazardous to use.

CROSNER LEGAL, P.C.

87.     Further, Defendant cannot legally sell the Tampons in California without a Proposition 65 disclosure on the labels, and thus, by definition they are not fit for the particular purpose of use inside the body.

88.     At the time the Tampons were sold, Defendant knew or should have known that Plaintiff and members of the Class would rely on Defendant's skill and judgment regarding the safety and composition of the Tampons. Because the Tampons contain lead, they are not of the same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Tampons are used (i.e., to be placed inside the body).

89.     By advertising and selling the Tampons at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Tampons are merchantable and conform to the promises or affirmations of fact made on the Tampon's packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant.

90.     Defendant's labeling and advertising, combined with the implied warranty of merchantability, constitute a warranty that the Tampons do not contain hazardous substances such as lead.

91.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiff and members of the Class purchased the Tampon to place inside their body. Defendant knew that the Tampons would be purchased and used without further testing by Plaintiff and Class members.

92.     Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Tampons for and specifically marketed the Tampons to consumers. Defendant breached the implied warranty of

CROSNER LEGAL, P.C.

merchantability. Because the Tampons contain lead, they are not fit for ordinary use (i.e., use inside the body).

93. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Tampons.

94. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Tampon, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for the loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

95. Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Tampons that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive. Reasonable consumers would look down upon it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The

CROSNER LEGAL, P.C.

wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.      Ordering damages for Plaintiff and the Class;

e.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

Dated: August 9, 2024

By:      */s/  Michael T. Houchin*
         MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

### Civil Code Section 1780(d) Affidavit

 I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing, business in California, including in this district. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

 Executed August 9, 2024 at San Diego, California.

       By:  */s/ Michael T. Houchin*

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT